# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BOBBI CASSIDY,                          :

    Plaintiff,                      :
                          Case No. 3:12cv00169

 vs.                                    :

                              District Judge Walter Herbert Rice

CAROLYN COLVIN,                         :    Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                :

    Defendant.                      :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

      Plaintiff Bobbi Cassidy brings this case challenging the Social Security

Administration's denial of her application for Supplemental Security Income ("SSI").

Plaintiff filed her SSI application on October 19, 2006, asserting that she has been under a

"disability" since January 1, 1996.  (*PageID##* 164-66).  Plaintiff claims to be disabled

due to bipolar disorder, depression, a steel rod in her right ankle, and bad knees.

(*PageID#* 186).

      After various administrative proceedings, Administrative Law Judge (ALJ) Janice

M. Bruning denied Plaintiff's applications based on her conclusion that Plaintiff's

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

impairments did not constitute a "disability" within the meaning of the Social Security

Act.  (*PageID##* 58-65).  The ALJ's nondisability determination and the resulting denial

of benefits later became the final decision of the Social Security Administration.  This

Court has jurisdiction to review the administrative denial of her applications.  *See* 42

U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the

Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. # 10), the

administrative record (Doc. # 7), and the record as a whole.

## II.    Background

### A.    Plaintiff's Vocational Profile and Testimony

Plaintiff was 42 years old on the date her application was filed, which defined her

as a "younger individual" for purposes of resolving her SSI claim.  *See* 20 C.F.R. §

416.963(c); (*PageID##* 64, 182).  Plaintiff has an eighth grade "limited" education.  *See* 20

C.F.R. § 416.964(b)(4); (*PageID##* 69-70, 193).  She has no past relevant employment.

(*PageID##* 64, 187).

Plaintiff testified that she worked "maybe" one or two jobs since October 2006, but

they did not last longer than four months.  (*PageID#* 71).  Plaintiff stated she experiences

panic attacks and crying episodes once a day.  (*PageID#* 73).  Medication does not help

with her crying spells.  (*Id.*).  Plaintiff explained she has difficulty thinking, concentrating,

focusing, and remembering.  (*PageID##* 73-74). Plaintiff testified that she has been clean

and sober for over a year.  (*PageID#* 74).  She testified she can perform activities of daily

2

living such as cooking and doing laundry. (*PageID##* 79, 80).  She helps a friend groom

dogs for approximately one hour every other week.  (*PageID##* 81-82).  Plaintiff testified

that she can sit for no more than twenty minutes.  (*PageID##* 77, 83).   Plaintiff testified

that she used to cut herself because of alcohol and drugs.  (*PageID#* 86).  Plaintiff stated

she has not tried to harm or cut herself since being sober.  (*PageID##* 74, 86).

### B.  Vocational Expert Testimony

The ALJ's residual functional capacity ("RFC") assessment[2] – which she

incorporated into her hypothetical question to the vocational expert ("VE") – considered

an individual with Plaintiff's age, education, and work experience; who is able to lift and

carry 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk a

total of two hours during an eight hour workday; can sit at least six hours during an eight

hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps

or stairs; can occasionally balance, stoop, crouch, kneel, and crawl; who should avoid

constant exposure to work hazards such as heights and moving machinery; is limited to

unskilled, four-step, simple, repetitive tasks; and should not come into contact with the

public for work related purposes, but could come in occasional contact with co-workers

and supervisors.

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Based on these limitations, the VE responded that such a hypothetical worker could perform a representative number of jobs, such as sorter, final assembler, inspector, and check weigher. (*PageID##* 89-90). With the added limitation of a sit/stand option, the VE testified that the same number of jobs would remain. (*PageID#* 90). The VE testified if an individual would be off task 20% of the workday or absent two days per month, he or she would be unable to maintain employment. (*Id.*). The VE further testified that her testimony is consistent with the *Dictionary of Occupational Titles*. (*Id.*).

### C.  Medical Opinions

Turning to other information in the administrative record, the parties have provided informative and detailed descriptions of such evidence. *See* Doc. #8 at *PageID##* 775-83; Doc. #9 at *PageID##* 794-99. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative, however, a general identification of the medical sources upon whom the parties rely will help frame further review and is therefore provided below.

### 1.  Mahmood Rahman, M.D.

The record contains treatment notes from Plaintiff's treating psychiatrist, Dr. Rahman, dated from March 1, 2008 through April 26, 2010. (*PageID##* 754-71). Initially, Dr. Rahman noted that aside from a depressed mood, Plaintiff had a properly groomed appearance; normal behavior; good eye contact; normal speech; goal directed thought; no delusion; no suicidal or homicidal ideation; no hallucinations; intact memory; average fund of knowledge; and fair and intact insight and judgment. (*PageID#* 772). Dr.

4

Rahman diagnosed bipolar disorder, anxiety disorder, alcohol abuse, and marijuana abuse. He assigned Plaintiff a GAF score of 51[3]. Dr. Rahman prescribed multiple psychotropic medications. (*PageID#* 773).

On May 12, 2008, Dr. Rahman completed a Mental Functional Capacity Assessment on behalf of the Ohio Department of Job and Family Services. According to Dr. Rahman, Plaintiff was extremely limited in her ability to do the following: remember locations and procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Plaintiff was found to be markedly limited in her ability to: understand, remember, and carry out very short and simple instructions; make

---

[3]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. Individuals with a GAF score of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." (*Id.*).

5

simple work-related decisions; ask simple questions and respond appropriately to criticism; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (*PageID##* 543-44).  Dr. Rahman reported Plaintiff had bipolar affective disorder and a panic disorder.  He concluded that Plaintiff was unemployable for twelve months or more. (*PageID#* 544).

On April 7, 2010, Dr. Rahman completed a mental impairment questionnaire. (*PageID##* 749-52).  He stated that he had seen Plaintiff every month since August 2009.  Her diagnosis was bipolar affective disorder, panic disorder, and polysubstance in remission since March 2009.  He assigned Plaintiff a GAF score between 40-45[4]. (*PageID#* 749).  Dr. Rahman noted that Plaintiff has severe emotional lability, with irritability, mood swings, circumstantiality, pressured speech, psychomotor agitation, flight of ideas, racing thought, chronic insomnia, and impaired concentration.  (*PageID#* 750).  Dr. Rahman noted that Plaintiff was only partially responsive to her medications (Seroquel, Pristiq, and Xanax).  Dr. Rahman thought Plaintiff's prognosis was "guarded." Her impairments were expected to last at least twelve months.  He stated, "[t]he underlying depression, anxiety, exacerbates her pain perception."  (*PageID#* 750).  He reported that

---

[4]A GAF score of 41-50 indicates "severe symptoms ... or  serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...."  DSM-IV-TR at 34.

she would be absent from work more than three times a month. Dr. Rahman opined that even if Plaintiff was not abusing drugs or alcohol, she still has serious underlying mental and emotional impairments that would markedly limit her ability to withstand the stress and pressure of work activity. He noted "[s]he has severe bipolarity which culminated in numerous hospitalizations and even if she has maintained sobriety she still would be expected to decompensate quite frequently especially when subjected to stressors." (*PageID#* 751). Dr. Rahman opined that Plaintiff had moderate limitations in activities of daily living; marked limitations in social functioning; marked limitations in maintaining concentration, persistence, or pace; and "marked episodes of deterioration or decompensation in work." (*PageID#* 752).

### 2. Donald Kramer, Ph.D.

On August 2, 2007, Dr. Kramer examined Plaintiff at the request of the Ohio Bureau of Disability Determination (BDD). (*PageID##* 482-88). Plaintiff complained of physical problems, but noted that her "main work limitations are due to her significant emotional and substance-abuse problems." (*PageID#* 482). Plaintiff admitted that she "drink[s] too much." (*Id.*). She told Dr. Kramer that she was currently drinking three or four times a week – between six and eight beers at a time – to the point of blacking out, and that she also was currently using marijuana a few times per week. (*PageID##* 482, 484). She also reported significant withdrawal symptoms in the past, as well as a past history of significant drug abuse. (*PageID#* 482). Plaintiff reported a

7

history of numerous arrests, mostly related to substance abuse.  (*PageID#* 483).  Plaintiff

reported that her longest period of employment was eight months.  (*PageID#* 484).

During the mental status examination, Dr. Kramer noted that Plaintiff showed some

evidence of anxiety; some hypomanic behavior; rapid, pressured, and overproductive

speech; and problems with concentration and focus.  (*PageID##* 484-85). Judgment,

insight, and her fund of general information were limited.  (*PageID#* 486) .

Dr. Kramer diagnosed Plaintiff with panic disorder with agoraphobia,

mixed bipolar disorder, alcohol dependence, cannabis dependence, and cocaine

dependence in recent remission.  He provisionally diagnosed personality disorder with

borderline and some antisocial features.  (*PageID#* 487).  He assigned her a GAF score of

49.  (*PageID#* 488).

Dr. Kramer opined that Plaintiff was moderately impaired in her ability to relate to

others, including coworkers and supervisors; and to understand, remember, and follow

instructions.  He found Plaintiff was markedly impaired in her abilities to maintain

attention, concentration, persistence, and pace to perform simple, repetitive tasks; and to

withstand stress and pressure of work activities.  Dr. Kramer concluded that Plaintiff has

the mental ability to perform simple and repetitive tasks, although she would have

difficulty with work attendance and tardiness because of her anxiety, depression, and

overall irresponsibility.  (*PageID#* 488).

### 3. <u>Todd Finnerty, Psy.D.</u>

After review of Plaintiff's medical records on August 8, 2007, Dr. Finnerty assessed her mental condition.  (*PageID##* 490-508).  Dr. Finnerty found Plaintiff had mild restriction in her daily activities; moderate restriction in maintaining social functioning; and moderate restrictions in maintaining concentration, persistence or pace. There was insufficient evidence to determine if Plaintiff had episodes of decompensation. (*PageID#* 505).  He further determined that the evidence did not establish the presence of the "C" criteria.  (*PageID#* 506).

Dr. Finnerty determined that Plaintiff would be moderately limited in her ability to do the following: maintain attention and concentration; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation.  (*PageID##* 490-91).

Dr. Finnerty found that Plaintiff "has had many more inpatient rehabs for drugs and alcohol than the two alleged psychiatric inpatient hospitalizations.  The psychologist opined that it was unclear how much substances played a role in those

9

hospitalizations.  The claimant reported her panic attacks were controlled when she was on medications.  He also expressed the opinion that the claimant's overall functioning would certainly improve with sustained sobriety from drugs and alcohol."  (*PageID#* 492).  Dr. Finnerty concluded that Plaintiff "retains the capacity to perform tasks in settings with limited, superficial interactions with others without fast paced production quotas where duties are static."  (*PageID#* 493).

### III.    Administrative Review

### A.    "Disability" Defined

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.  An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

### B.    ALJ Bruning's Decision

ALJ Bruning resolved Plaintiff's disability claim by using the five-Step

sequential evaluation procedure required by the Social Security Regulations.  *See PageID##* 58-60; *see also* 20 C.F.R. § 416.920(a)(4).  Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff has the following severe impairments: status-post right ankle fracture, depression with anxiety features, and a history of alcohol and polysubstance abuse.  (*PageID#* 60).

The ALJ concluded at Step 3 that Plaintiff does not have an impairment or combination of impairments that meets or equals the criteria in the Listing of Impairments. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff retained the RFC to "perform sedentary work . . . with no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; with a sit/stand option allowing the claimant to sit one hour before standing; involving unskilled 4-step simple repetitive tasks with no public contact and occasional contact with co-workers and supervisors."  (*PageID##* 61-62).

At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy.  (*PageID##* 64-65).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for SSI. (*PageID#* 65).

## IV.    Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    The Plaintiff's Contention

Plaintiff contends that the ALJ erred in her evaluation of treating psychiatrist, Dr. Rahman's opinions.  (Doc. #8 at *PageID#* 784).  According to Plaintiff, the ALJ "gave no medical opinion as a basis for her [RFC] determination."  (*Id.* at *PageID#* 785).  Plaintiff argues Dr. Rahman's opinions were supported by his treatment notes and the opinion of consulting psychologist, Dr. Kramer.  (*Id.* at *PageID#* 789).

### B.    The Opinion of the Treating Physician

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997)).  However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it

is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).  In *Wilson*, the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques; (2) it is inconsistent with substantial evidence in the record; (3) it does not identify the evidence supporting its finding; and (4) it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.  *Wilson*, 378 F.3d at 546.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(e).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As to non-treating medical sources, the Regulations do not permit an ALJ to automatically accept or reject their opinions.  *See id.* at *2-*3.  The Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating

14

medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1572(f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3.

### C.    Analysis

Plaintiff argues that the ALJ erred by not giving controlling or deferential weight to Dr. Rahman's opinions regarding her mental limitations.  Although the ALJ determined that Dr. Rahman's opinions are entitled to "no weight," *see PageID#* 64, she completely ignored the specific restrictions identified by Dr. Rahman that are described above.  For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for further proceedings.

The ALJ's failure to provide an explanation of what factors she considered, if any, while assessing the specific limitations identified by Dr. Rahman was contrary to the reason-giving requirement required by the Commissioner's Regulations.  *See Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544-45.  Again, "the ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.  This reason-giving requirement accomplishes two goals:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reasons for the agency's decision is supplied.  Second, the

15

> explanation ensures that the ALJ applies the treating physician rule
> and permits meaningful appellate review.

*Id.* at 242-43 (quoting, in part, *Wilson*, 378 F.3d at 544) (internal punctuation and

citations omitted).

Here, the ALJ provided the following two sentences in determining Dr. Rahman's

opinions are entitled to "no weight":

> As for the opinion evidence, no weight is afforded to the opinion of Dr. Rahman,
> dated May 12, 2008 since it does not discuss the claimant's alcohol and drug use
> although the claimant was using at that time and it was well documented in the
> record (Exhibit 19F). No significant weight is afforded to the opinion of Dr.
> Rahman, dated April 7, 2010, the doctor admits he is not sure if the claimant is
> really sober, and the findings are not supported by treatment notes or the
> claimant's activities of daily living, including her performing chores (Exhibit 31F).

(*PageID#* 64). The only issue referenced in the ALJ's decision as to Dr. Rahman's 2008

opinion is substance abuse. (*PageID#* 64). The ALJ does not explain how Plaintiff's

substance abuse is inconsistent with Dr. Rahman's opinion or Plaintiff's description of

her limitations. The ALJ afforded no weight to Dr. Rahman's 2010 opinion. The ALJ

again noted the substance abuse issue and determined Dr. Rahman's opinion is not

supported by his treatment notes or Plaintiff's activities of daily living. (Id.).

Dr. Rahman's opinions were not "so patently deficient" that the Commissioner

could not possibly credit them. *See Wilson*, 378 F.3d at 547. Dr. Rahman's opinions are

supported by treatment records documenting Plaintiff's depression and sleep problems

(*PageID##* 344, 449, 631, 720, 737 ); anxiety (*PageID##* 339, 351, 725); impaired

memory and attention/concentration (*PageID##* 361-62, 633); poor coping skills

16

(*PageID#* 470); tearful, dysphoric and tangential thought processes (*PageID##* 461, 476, 569-70, 719-20); distractedness and agitatation (*PageID##* 461, 470, 532, 616, 621, 703, 705, 707, 709, 712, 758, 762); limited insight (*PageID##* 728, 732); and resistant behavior (*PageID#* 728).  Even the ALJ acknowledged this condition in finding Plaintiff should be restricted to unskilled work that would involve 4-step simple repetitive tasks with no public contact and occasional contact with coworkers and supervisors. (*PageID##* 61-62 (Finding #4)).

Turning next to the six-factor analysis that the ALJ should have applied to Dr. Rahman's opinions, *see Blakley,* 581 F.3d at 406; *Wilson*, 378 F.3d at 544, it is clear that the credibility of Dr. Rahman's opinion is enhanced by the "length of the treatment relationship" and "specialization" criteria.  At the time of the 2010 assessment, Dr. Rahman had treated Plaintiff on a monthly basis for at least two years.  (*PageID##* 754-71).  Dr. Rahman is a psychiatrist, and thus a specialist in the psychological impairments at issue in this case.

As to "the nature and extent of the treatment relationship" between the doctor and the claimant, *see id.*, Dr. Rahman's relationship with Plaintiff is that of a treating psychiatrist who engaged in monthly sessions with Plaintiff.  Accordingly, this also would seem to bolster the weight due his opinion.  The final criterion – "consistency" with other record evidence, *see id.* – also is present in this case.  As noted above, the longitudinal treatment record reflects the severity of Plaintiff's mental impairments. Moreover, Dr. Rahman's observations and conclusions are consistent with those of Dr.

17

Kramer, who examined Plaintiff at the request of the Administration.  (*PageID##* 482-88).  Accordingly, the ALJ erred by failing to accord significant weight to Dr. Rahman's opinions.

In this case, the ALJ never even mentioned the specific limitations identified by Dr. Rahman in his reports, much less explain why she declined to adopt those limitations.  The ALJ's failure to provide good reasons for rejecting Dr. Rahman's opinions was not harmless error.  *See Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545) ("[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

At the request of the Administration, Dr. Kramer conducted a thorough consultative psychological examination of Plaintiff on August 2, 2007, as is summarized above.  (*PageID##* 482-88).  The ALJ also failed to discuss what weight should be given to Dr. Kramer's report.  Once again, this omission leaves the Court unable to determine whether the ALJ's decision is supported by substantial evidence.  *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).  The Regulations require that the rationale for a disability decision "be written so that a clear picture of the case can be obtained."  SSR 82-62 at *4. An ALJ's decision must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion."  (*Id.*).

18

Dr. Rahman's opinion is that of a medical professional (and treating source), is based upon a substantial number of consistent treatment notes spread over a significant period of time, and identifies specific signs and symptoms which support his opinion. Had the ALJ provided some reasoning for the lack of deference she accorded to Dr. Rahman's opinion, the Court may very well have been able to identify some reasonable basis for her decision. Based on her incomplete analysis, however, the Court is unable to determine what factors, if any, the ALJ considered while assessing Dr. Rahman's opinions. Moreover, to the extent the issue of substance abuse was the factor intended to be relied upon by the ALJ in providing Dr. Rahman's opinions no weight, such reasoning is insufficient. *See Gayheart*, 710 F.3d 365, 381 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)) ("alcohol abuse is not a factor to be considered in determining the weight to be given to a treating-source opinion").

Therefore, the ALJ's decision to give no weight to Dr. Rahman's opinion is unreasonable and unsupported by the evidence.

## VI.  REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or her factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See id.* However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems discussed above.

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-Step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for SSI should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The ALJ's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3.    This matter be REMANDED to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.    The case be TERMINATED on the docket of this Court.

June 3, 2013                                         _____s/ Sharon L. Ovington_____
                                                    Sharon L. Ovington
                                          Chief United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

      Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).